IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOPE BAER,<br><br>      Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br><br>      Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:12-cv-162 |

      Hope Baer seeks judicial review of the decision of the Commissioner of Social Security denying Ms. Baer's application for Supplemental Security Income under Title XVI of the Social Security Act. 42 U.S.C. §§ 1381-1383f. After a careful review of the record and for the reasons discussed below, the court finds that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

BACKGROUND

I.     **Procedural History**

      Ms. Baer filed her social security application on July 14, 2008. She alleged disability due to depression, high blood pressure, thyroid problems, arthritis, and restless leg syndrome. While she originally claimed that her disability began in 2002, she later amended her alleged onset date to July 14, 2008. Her application was denied initially and on reconsideration. Ms. Baer requested a hearing, which was held on April 21, 2010, in front of Administrative Law Judge Robin L. Henrie. Judge Henrie denied Ms. Baer's claim and the Appeals Council denied Ms.

Baer's request for review. Ms. Baer then filed this appeal.

At the administrative hearing, Judge Henrie noted that Ms. Baer had previously filed similar claims that were denied by a different ALJ on May 9, 2008. That decision was affirmed by the Honorable David Nuffer. (*See* Case No. 2:09-cv-34.) While the court notes that the case decided by Judge Nuffer is quite similar to the case that is now before the court, the court reviews Judge Henrie's decision without considering Judge Nuffer's previous ruling.

## II. Factual Background

Ms. Baer was forty-eight years old at the time of Judge Henrie's decision. She has completed the seventh grade in school. (R. at 375.) Ms. Baer's last work position was as a cashier in 2001. She claims that the primary reasons she can no longer work are her back and leg pain. (R. at 388, 391.)

### A. Medical Evidence

The record demonstrates that Ms. Baer saw her treating physicians a number of times between 2007 and 2010. Having reviewed the entire record, the court concentrates on the results of four visits which the court finds to be the most significant. On July 27, 2007, Ms. Baer saw Dr. Easton Jackson and told him that she was applying for disability "based on her restless leg syndrome and her depression." She requested a letter verifying her conditions. (R. at 234.) On February 19, 2008, Ms. Baer reported knee problems to Dr. Jackson and had an x-ray which confirmed that Ms. Baer had mild osteoarthritis in her knees. (R. at 270-73.) On May 13, 2009, Dr. Jackson filled out a functional assessment form in which he indicated that Ms. Baer was disabled. (R. at 248-51.) And on March 17, 2010, Dr. Alan Smith evaluated Ms. Baer. (R. at 290-94.) The next day, Dr. Smith filled out a similar functional assessment form that also

indicated that Ms. Baer was disabled. (R. at 335-37.) Based on the information provided in these visits, as well as other information in the record, the court summarizes the medical evidence supporting Ms. Baer's conditions below.

First, Ms. Baer has been diagnosed with osteoarthritis. The x-ray that was ordered by Dr. Jackson on February 19, 2008, confirmed that Ms. Baer has "mild joint space narrowing" in her knees. (R. at 273.) A physical examination on that date revealed no decrease in range of motion or strength. (R. at 271.) Ms. Baer had an equivocal result on her McMurray's test, which measures possible tears in the meniscus. (*Id.*) Her results also indicated a "2/4 patellar tendon reflex," but Ms. Baer has not provided any evidence to show that a 2/4 reflex is an abnormal result. Dr. Jackson did not recommend any changes to Ms. Baer's medication regime during the February 2008 visit. (*Id.*) Dr. Jackson noted "general osteoarthritis" as one of Ms. Baer's current conditions on a number of visits in 2009. (*See, e.g.*, R. at 191, 195, 199.) On March 17, 2010, Dr. Alan Smith noted "osteoarthritis of the knees" as a diagnosis and stated that Ms. Baer had "moderate pain" that began "several months ago." (R. at 290.) Dr. Smith's statement is strikingly similar to Dr. Jackson's statement from February 19, 2008, except that Dr. Jackson said that the pain began "two weeks ago" instead of "several months ago." (*Compare* R. at 290 *with* R. at 270.)

Second, Ms. Baer has been diagnosed with peripheral neuropathy. Judge Henrie gives a detailed account of the various references to this condition by Dr. Jackson and Dr. Smith. (R. at 23.) Dr. Jackson first listed peripheral neuropathy as a diagnosis on February 16, 2009, although it was not discussed in any detail in his office report. (R. at 196-98.) A number of later visits mention peripheral neuropathy as a current problem, but exam findings for neurological

3

symptoms are inconsistent. (*Compare* R. at 200 (finding that Ms. Baer was positive for paresthesia on January 30, 2009) *with* R. at 192 (finding that Ms. Baer was negative for paresthesia on May 13, 2009).) On March 17, 2010, Dr. Smith stated that Ms. Baer "presents with a diagnosis of peripheral neuropathy. Has a long history of nerve pain in the feet and legs. She is on Gabapentin for treatment. Results are moderate, though some continuing pain." (R. at 290.) Judge Henrie noted that the Gabapentin was originally prescribed for restless leg syndrome. (R. at 29.)

Third, Ms. Baer suffers from chronic obstructive pulmonary disease (COPD). Ms. Baer has a history of asthma and smoking and on January 30, 2009, Dr. Jackson noted that Ms. Baer was extremely dyspneic and very limited in her mobility. (R. at 199.) He stated that her symptoms were quite severe. (*Id.*) But office notes from a later visit on May 13, 2009, indicate that Ms. Baer was not frequently wheezing and did not have a chronic cough. (R. at 192.) When Dr. Smith examined Ms. Baer on March 17, 2010, he noted that she was negative for cough and dyspnea, and did not indicate any respiratory problems. (R. at 290.)

Fourth, Ms. Baer alleges that her depression is a disabling condition. Ms. Baer was diagnosed with dysthymic disorder by Dr. A. L. Carlisle, a consultative psychologist, on February 10, 2009. (R. at 166-68.) Dr. Carlisle assigned Ms. Baer a Global Assessment Functioning score of 57.[1] Dr. Carlisle also provided a history of Ms. Baer's past. Ms. Baer was born in Greece and placed in an orphanage as a baby or young child. When she was two years old, she was adopted by an American family, but the mother in her new family committed suicide when Ms. Baer was

---

[1] A Global Assessment Functioning score of 51-60 indicates "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text revision 2000), p. 34.

4

fourteen. (*Id.*) Ms. Baer's treating physicians, Dr. Jackson and Dr. Smith, also report depression as one of Ms. Baer's conditions. (*See, e.g.*, R. at 191.)

Fifth, Ms. Baer has been diagnosed with moderate obesity. (R. at 199.) But Dr. Jackson and Dr. Smith do not mention obesity as a disabling problem and there is no mention of active treatment for this condition besides encouraging Ms. Baer to control her weight. (R. at 249, 293.)

Finally, Ms. Baer has at times exhibited symptoms of a number of other conditions, including acid reflux disease, benign hypertension, hypothyroidism, restless leg syndrome, and generalized pain. (R. at 210.)

In his evaluation conducted on May 13, 2009, Dr. Jackson noted that Ms. Baer was having "progressive generalized pain, COPD worsening, and neuropathy. I don't think these are likely to improve, and will likely worsen over time." (R. at 191.) That same day, Dr. Jackson filled out a functional assessment form in connection with Ms. Baer's disability application. (R. at 249-51.) In that form, Dr. Jackson diagnosed Ms. Baer with COPD, peripheral neuropathy, and osteoarthritis in multiple joints. He stated that these conditions were "progressive and unlikely in [sic] improve to any significant degree." (R. at 251.) In his opinion, Ms. Baer had the following capabilities and limitations: she could sit and stand for fifteen minutes at a time; she could lift up to five pounds, she could occasionally balance, operate a motor vehicle, perform fine and gross manipulation with her hands, and raise and use her arms; she could not bend, stoop, or work around dangerous equipment, and she could not tolerate exposure to smoke, dust, or fumes. (*Id.*)

A year later, Dr. Smith also filled out a functional assessment form for Ms. Baer. He

answered every question with the same response given by Dr. Jackson, except that Dr. Jackson did not respond to a question asking how many hours total Ms. Baer could work in a day. (R. at 249-51, 335-37.) Dr. Smith did answer that question, and stated that Ms. Baer could work for two hours during an eight-hour workday. (R. at 337.) Both Dr. Jackson and Dr. Smith opined that they believed Ms. Baer's pain was "moderate," that her symptoms of fatigue and malaise were "moderate," and that the manifestations of inflammatory arthritis on her skin were "moderate." (R. at 250, 336.) Ms. Baer was not on long-term steroid therapy or supplemental oxygen. (R. at 249-50, 335-36.) Finally, both doctors checked the boxes indicating that Ms. Baer had "marked restrictions of activities of daily living," "marked difficulty in maintaining social functioning," and "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere) due to pain." (R. at 251, 337.)

These restrictions noted by Ms. Baer's treating physicians are more severe than those found by Dr. David Peterson, a state agency physician who reviewed Ms. Baer's medical records in August 2008 and concluded that the objective medical evidence did not support Ms. Baer's reported limitations. (R. at 140.) Dr. Peterson concluded that Ms. Baer had "essentially normal objective findings" and that her knee problems were "mild." He also noted that Ms. Baer had not received any medical treatment during the eight months before his review of her records. Based on the exam findings, Dr. Peterson found that Ms. Baer had only non-severe physical limitations that would not prevent work. (*Id.*) Ms. Baer's records were also reviewed by a state agency psychologist, Dr. Christopher Wehl. Dr. Wehl found that there was insufficient evidence to evaluate Ms. Baer's claims of severe mental impairments, a finding that was based, in part, on

Ms. Baer's failure to show up for two scheduled consultative examinations. (R. at 158.)

B. Testimonial Evidence

The court has carefully read the transcript of the hearing before Judge Henrie on April 21, 2010, and finds that Judge Henrie has accurately summarized Ms. Baer's testimony in his decision. (R. at 27-28.) The court repeats a number of salient points from the hearing transcript below.

Ms. Baer testified that her arthritis is very painful and that she cannot stand for more than ten minutes before she feels like she will collapse. (R. at 378, 381.) She cannot reach for items that are in her cupboard and she has problems folding clothes. (R. at 378.) She has to move around a lot due to tingling and heaviness in her legs, but she can only walk for three to five minutes before she has to sit down. (R. at 380, 388.) Her pain is constant, and on the day of the hearing she testified that her pain was between an 8.5 and a 9 on a ten point scale. (R. at 380, 392.) She takes a Lortab four to six times per day and needs to lie down seven to eight times a day because of the pain. (R. at 379, 390.) She lies down for twenty to thirty minutes before she can get up again. (R. at 379.) She testified that she is often depressed and tearful, and that she gets distracted easily. (R. at 395-96.)

Judge Henrie also heard testimony from a vocational expert, who was asked about the work possibilities for a hypothetical individual of Ms. Baer's age, education, and past work experience who could perform unskilled sedentary work with the following limitations:

- standing or walking no more than two hours in an eight-hour workday;
- sitting no more than six hours in an eight hour workday;
- the ability to make brief postural changes every five to ten minutes;

7

- no more than frequent reaching, handling, and fingering;

- working in a clean, climate-controlled environment with no dust, smoke, or fumes;

- working at a low concentration level;

- working no more than at a low memory level; and

- not requiring any driving duties.

(R. at 399-400.) The vocational expert testified that an individual with those limitations could perform jobs that exist in the national economy, such as a lens block gauger, a level vial sealer, or a mainspring former. (R. at 400.)

Judge Henrie posed two additional hypotheticals to the vocational expert. In the first, Judge Henrie asked if any jobs were available if he included a limitation that the individual could only reach, handle, and finger occasionally. The vocational expert responded that there were not. (R. at 401.) The vocational expert similarly answered that no jobs were available to an individual with the limitations posed in Judge Henrie's third hypothetical, which included the need to either miss work three to four days per month or work with a productivity rate of fifteen to twenty percent below average performance. (R. at 401-02.)

## ANALYSIS

### I. Standard of Review

The court reviews the Commisioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence "requires more than a scintilla but less than a preponderance." *Id.* It is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). Further, the court "will not reweigh the evidence or substitute [its own] judgment for the Commissioner's . . . [and] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (citation omitted).

**II.     Judge Henrie's Decision**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

A person seeking Social Security benefits bears the burden of proving that because of her disability, she is unable to perform her prior work activity. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). Once the claimant establishes that she has such a disability, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other work and that jobs which she can perform exist in the national economy. *Id.*

The Commissioner has established a five-step process for determining whether a person is disabled:

9

(1) A person who is working is not disabled. 20 C.F.R. § 416.920(b).

(2) A person who does not have an impairment or combination of impairments severe enough to limit his ability to do basic work activities is not disabled. 20 C.F.R. § 416.920(c).

(3) A person whose impairment meets or equals one of the impairments listed in the "Listing of Impairments," 20 C.F.R. § 404, subpt. P, app. 1, is conclusively presumed to be disabled. 20 C.F.R. § 416.920(d).

(4) A person who is able to perform work he has done in the past is not disabled. 20 C.F.R. § 416.920(e).

(5) A person whose impairment precludes performance of past work is disabled unless the Secretary demonstrates that the person can perform other work available in the national economy. Factors to be considered are age, education, past work experience, and residual functional capacity. 20 C.F.R. § 416.920(f).

Judge Henrie performed this sequential analysis, and found as follows: (1) Ms. Baer has not engaged in any substantial gainful activity since the date of her application; (2) she has severe impairments of obesity, COPD, generalized osteoarthritis and osteoarthritis of the knees, and dysthymia and/or major depressive disorder; (3) she does not have an impairment or combination of impairments that meets or equals the listings; (4) she is unable to perform past relevant work; but (5) she is capable of performing jobs that exist in significant numbers in the national economy. (R. at 21-31.) Based on these findings, Judge Henry concluded that Ms. Baer was not disabled under the Social Security Act. (R. at 31.)

### III. Ms. Baer's Objections to Judge Henrie's Ruling

Ms. Baer believes that Judge Henrie did not base his opinion on substantial evidence for three reasons. First, she argues that he inappropriately gave no weight to the functional assessments of her treating physicians. Second, she contends that Judge Henrie failed to

10

adequately consider her own subjective testimony. Finally, she asserts that Judge Henrie failed to identify other work consistent with her functional limitations.

Addressing Ms. Baer's final argument first, the record shows that Judge Henrie posed three hypotheticals to the vocational expert during Ms. Baer's hearing. As described above, the first hypothetical encompassed all the limitations that Judge Henrie listed as part of Ms. Baer's residual functional capacity. (*Compare* R. at 26 *with* R. at 399-400.) The expert testified that, given those limitations, there were a number of jobs available in significant numbers in the national economy. Judge Henrie then imposed additional restrictions and the expert responded that no jobs would be available. Ms. Baer does not dispute the vocational expert's testimony. Instead, she believes that Judge Henrie failed to properly assess her appropriate residual functional capacity. She alleges that if he had, he would have concluded that, based on the vocational expert's answers to his second and third hypotheticals, there were no jobs available to Ms. Baer. As a result, it is really Judge Henrie's residual functional capacity assessment and not his vocational analysis that Ms. Baer disagrees with. The question of Ms. Baer's appropriate residual functional capacity turns on the points that Ms. Baer makes in her first two arguments.

    A. Opinions of the Treating Physicians

Ms. Baer first contends that Judge Henrie erred when he gave no weight to the functional assessments provided by Ms. Baer's treating physicians, Dr. Jackson and Dr. Smith. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). An ALJ must give the opinion of a treating physician controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and "consistent with other substantial evidence in the record. . . . [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* But even if not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 C.F.R. § 416.927." *Id.* These factors include the nature and extent of the treatment relationship, the evidence supporting a medical source's opinion, and the consistency of that opinion. 20 C.F.R. § 416.927(c)(2)-(4). An ALJ is not required to "apply expressly" all relevant factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258-59 (10th Cir. 2007). And a treating physician's opinion may be rejected if there is a discrepancy between a very restrictive functional assessment and contemporaneous examination findings. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002).

Judge Henrie provided four reasons why he was giving no weight to the functional assessments provided by Ms. Baer's treating physicians.[2] (R. at 25.) First, he noted that the three-page functional assessments filled out by Dr. Jackson and Dr. Smith were identical on every point except two. Whereas Dr. Smith stated that Ms. Baer could work for only two hours a day, Dr. Jackson made no response to this question. The comments at the end of the assessments are also distinct. But because every other question on the form had an identical answer, Judge Henrie concluded that Dr. Smith simply copied Dr. Jackson's functional assessment. The court finds that Judge Henrie's inference is logical, especially since Dr. Smith had only treated Ms. Baer once during a visit which occurred the day before he filled out the functional assessment. As a result, there was substantial evidence to support Judge Henrie's decision to give Dr. Smith's

---

[2] While Judge Henrie did not discuss whether he was giving "controlling weight" to the treating physicians' opinions, his decision to give no weight to these opinions made his answer to this question clear and obviated the need for him to discuss this first step of the analysis.

opinion no weight. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (designation as a "treating" physician "requires a relationship of both duration and frequency").

Second, Judge Henrie held that the doctors both indicated that the "symptoms" were progressive and reasoned that this statement implied that the complaints, but not the disease, were progressive. While the Judge's assertion is reasonable as it applies to Dr. Smith, the court agrees with Ms. Baer that Judge Henrie's argument should not apply to Dr. Jackson. Dr. Jackson clearly stated that Ms. Baer's conditions were "progressive and unlikely in [sic] improve to any significant degree." (R. at 251.) But the court finds that this mischaracterization is a minor error, especially given Judge Henrie's third stated reason why he discredited the assertion that Ms. Baer's condition was progressive. Judge Henrie observed that although both doctors indicated a progression of either illness or symptoms, the doctors' assessments showed "exactly the same level of function a year apart, which contradicts their statements about progression." (R. at 25.) The court agrees that, if Dr. Smith did not simply copy his form from Dr. Jackson, then Dr. Smith's findings belie any statements that Ms. Baer's conditions were progressive.

Finally, Judge Henrie chose to reject the doctors' assessments because he found nothing in the medical record to support their opinions. While Ms. Baer argues that Judge Henrie failed to recognize the x-ray of her knee, the 2/4 patellar tendon reflex, and the results of the McMurray's test, her argument is not persuasive. Judge Henrie discussed the x-ray at multiple points in his opinion, and noted that the evidence showed only mild osteoarthritis. And as mentioned above, Ms. Baer failed to provide any evidence about whether a 2/4 patellar tendon reflex is an indication of normal or impaired functioning. During the visit when these tests were administered, Dr. Jackson himself did not make any remarks about either her patellar tendon

13

reflex or McMurray's sign. (*See* R. at 271.) Instead, he simply diagnosed osteoarthritis in the knee. (*Id.*) Since Judge Henrie clearly stated that Ms. Baer had mild osteoarthritis of the knee, there was no need for him to evaluate the equivocal evidence provided by Ms. Baer's reflex and McMurray's tests. Judge Henrie also discussed the lack of objective medical evidence in other sections of his opinion. For instance, he questioned the extent of Ms. Baer's peripheral neuropathy because he did not see any objective tests or examination findings that supported this diagnosis. (*See* R. at 24.) For these reasons, the court finds that Judge Henrie reasonably determined that the medical record on the whole did not support the restrictive limitations indicated by Dr. Jackson and Dr. Smith in their functional assessments.

Given all of the reasons that Judge Henrie provided for his decision to discredit the functional assessments of Ms. Baer's treating physicians, especially his first and fourth reasons, the court finds that Judge Henrie's decision was supported by substantial evidence in the record. The inconsistencies and lack of medical evidence, as well as the contrary medical evaluations from state agency physicians, gave Judge Henrie a reasonable basis to reject the "marked restrictions" found by Dr. Jackson and Dr. Smith. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (an ALJ may consider other medical opinion evidence in rejecting the opinion of a treating physician); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (an ALJ reasonably discounted a treating physician's opinion which was inconsistent with other medical evidence). In any event, Judge Henrie did not entirely disregard the opinions of these treating physicians. Judge Henrie clearly considered and relied on other reports by the physicians, including their treatment notes and diagnoses. And Judge Henrie's findings about Ms. Baer's residual functional capacity are consistent with the majority of limitations listed by the physicians

in the functional assessments, including Dr. Jackson's statement that Ms. Baer's pain was "moderate." Judge Henrie simply determined the more severe limitations indicated by the treating physicians, such as Dr. Smith's statement that Ms. Baer could only work for two hours a day, were not supported by the record.

### B. Ms. Baer's Testimony

Ms. Baer also contends that Judge Henrie did not adequately take into account her subjective testimony. Credibility determinations are the province of the ALJ and should not be disturbed if supported by substantial evidence. *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Nevertheless, the ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citation omitted). In addition, the ALJ must give specific reasons for rejecting a claimant's subjective allegations of pain. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Judge Henrie did consider Ms. Baer's statements when determining that she had reduced functioning, but stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. at 28.) He based his decision on the lack of medical evidence demonstrating any condition other than mild osteoarthritis, as well as the contrary opinions of the agency medical experts. He also noted several inconsistencies in the reports of the treating physicians, including statements about hypertension and hypothyroidism that appeared to be copied from earlier reports to later reports with no indication of the current status of those conditions. (R. at 29.)

Ms. Baer argues that Judge Henrie failed to comply with the requirements of a social

15

security ruling, which advises that "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, 1996 WL 374186, at *4. But Judge Henrie found that Ms. Baer lacked credibility not only due to the lack of objective medical evidence, but also because a number of agency medical experts opined that Ms. Baer did not have the functional limitations she described. Even Dr. Jackson and Dr. Smith believed that Ms. Baer's pain was "moderate," whereas Ms. Baer testified that her pain was between an 8.5 and a 9 on a ten point scale during the hearing with Judge Henrie. And even though Judge Henrie found "no significant evidence of any disabling physical or mental condition," he still included a number of fairly serious limitations in his assessment of Ms. Baer's residual functional capacity. (R. at 30.) Given Judge Henrie's thorough review of the medical record and the adverse opinions of the state agency physicians, the court finds that Judge Henrie supplied specific reasons to discredit the extent of pain and limitations that Ms. Baer alleged and that his decision is supported by substantial evidence in the record.

Ms. Baer also contends that Judge Henrie failed to acknowledge that her limited financial resources prevented her from getting more testing to document her conditions. For instance, Dr. Jackson mentioned during one visit that he was concerned about heart failure but did not order any tests because Ms. Baer could not afford an echocardiogram. (R. at 199.) But there is no other evidence that heart failure was a cause of Ms. Baer's pain and limitations. And there is no indication that Ms. Baer was unable to pay for the medication that was prescribed for her various conditions, or that such inability to follow through with the recommended treatment was the

reason why Ms. Baer could not work. A careful review of the record shows that it was not a lack of medical evidence that drove Judge Henrie's decision, but a lack of objective findings in the ample medical evidence provided by her doctors when Ms. Baer did seek and obtain treatment. As a result, the court finds that Judge Henrie's ruling cannot be impugned for a failure to consider Ms. Baer's financial resources.

## CONCLUSION

For the reasons stated above, the court finds that Judge Henrie's decision is supported by substantial evidence. His ruling is therefore AFFIRMED.

DATED this 9th day of July, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge